1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                        SAN JOSE DIVISION

10   Thomas Leonard, et al.,                    NO. C 05-00829 JW

11              Plaintiffs,           **ORDER GRANTING IN PART AND
                                       DENYING IN PART CROSS-MOTIONS**
        v.                            **FOR SUMMARY JUDGMENT;**
12                                    **DENYING MOTION TO STRIKE;**
     Bimbo Bakeries USA Inc.,          **DENYING MOTION FOR SANCTIONS;**
13                                    **GRANTING MOTION TO RELATE**
              Defendant.              **CASES; DENYING MOTION TO**
14                                    **CONSOLIDATE CASES**

15   _____/

16

17                          **I.  INTRODUCTION**

18       Thomas Leonard and five other individuals[1] (collectively, "Plaintiffs") bring this suit for

19   violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and related state law

20   claims.  Plaintiffs allege that their employer, Bimbo Bakeries USA, Inc. ("Defendant"), violated

21   FLSA and related statutes by: (1) failing to pay minimum wage, overtime, and wages due at

22   termination; (2) failing to provide meal breaks and itemized wage statements; and (3) failing to keep

23   required records.

24       Presently before the Court are the parties' Cross-Motions for Summary Judgment.  Plaintiffs

25   move as to their Third Claim for Relief, for failure to provide meal breaks.  Defendant moves as to

26   all claims.  The Court conducted a hearing March 12, 2007.  Based on the papers submitted to date

27   _____

28       [1]  These other named Plaintiffs are Gary Hoskins, Larry Brian Newman, Jr., Chris Herr,
     William F. Harrison, and Charlie Bradaric.

**United States District Court**
For the Northern District of California

and the arguments of counsel, the Court GRANTS in part and DENIES in part Defendant's Motion

for Summary Judgment, and DENIES Plaintiffs' Motion for Summary Judgment.

## II.  BACKGROUND

**A.    Factual Background**

Defendant is a wholesale baking business with its principal place of business in Fort Worth,

Texas.  (Declaration of Dan Hopson in Support of Defendant's Motion for Summary Judgment ¶ 2,

hereafter, "Hopson Decl.," Docket Item No. 211.)  In 2002, Defendant purchased the west coast

operations of George Weston Bakeries.  (Id. ¶ 3.)  Defendant distributes baked goods throughout the

United States under brand names including Orowheat, Entenmann's Thomas' English Muffins,

Boboli, Francisco, Bimbo, Marinela, and Tia Rosa.  (Id. ¶ 2.)

In California, Defendant employs "transport drivers" to transport products from their point

of origin to distribution centers throughout California, and from those distribution centers to smaller

distribution depots around the state.  (Hopson Decl. ¶¶ 5, 6.)  Defendant also employs Route Sales

Representatives ("RSRs"), all union members, whose employment is governed by Collective

Bargaining Agreements (CBAs).  (Id. ¶ 6.)  In contrast to the transport drivers, RSRs distribute from

the smaller distribution depots to customers.  (Id. ¶¶ 5, 27-28.)  Each RSR has his or her own "sales

route" assigned pursuant to a bidding process set forth in the CBA.  (Id. ¶ 10.)  There are five types

of sales routes, primarily defined by the types of product covered: "bread routes," "cake routes,"

"combo routes," (which include bread, snack, and cake products), "Hispanic routes," (which include

tortillas, snack cakes, and candy), and "Old Country routes," (routes serving restaurant and

institutional customers).  (Id.)[2]  Plaintiffs are six current and former RSRs employed by Defendant.

(Declaration of Laura Thompson-McCann in Support of Defendant's Motion for Summary Judgment

¶ 3, hereafter, "Thompson-McCann Decl.," Docket Item No. 216.)

*//*

---

[2]  Of the 36 Plaintiffs that are part of the conditionally certified FLSA class (see II.B, below),
12 have or had bread routes, eight have cake routes, and 14 combo routes.  The remaining two
Plaintiffs are "relief RSRs," who cover the routes of RSRs absent from work.  (Hopson Decl. ¶ 11.)

**B.**    **Procedural History**

Plaintiffs filed their Complaint on February 25, 2005.  (Docket Item No. 1.)  Plaintiffs filed a First Amended Complaint on May 15, 2006.  (Docket Item No. 143.)  The First Amended Complaint alleges the following claims: (1) First Cause of Action for FLSA overtime, minimum wage, and record keeping violations; (2) Second Cause of Action for failure to pay wages at overtime rates, in violation of California Labor Code Section 1194 and IWC Wage Orders, and related violations, including minimum wage violations; (3) Third Cause of Action for failure to provide meal breaks; (4) Fourth Cause of Action for failure to pay wages on ending of employment; (5) Fifth Cause of Action for failure to provide itemized pay statements in violation of California Labor Code § 226; and (6) Sixth Cause of Action for violations of California Business and Professions Code section 17200.

On December 27, 2006, the Court granted in part Plaintiffs' Motion for Conditional Collective Certification.  To date, 30 current or former RSRs have filed consents to be joined as Plaintiffs, for a total of 36 Plaintiffs.  (Declaration of Wendy Lazerson in Support of Defendant's Motion for Summary ¶¶ 3-4, hereafter, "Lazerson Decl.," Docket Item No. 210.)

Before the Court are the parties' Cross-Motions for Summary Judgment.

## III.  STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact."  Id. at 323.  The non-moving party must then identify specific facts

United States District Court

For the Northern District of California

3

1    "that might affect the outcome of the suit under the governing law," thus establishing that there is a

2    genuine issue for trial.  Fed. R. Civ. P. 56(e).

3         When evaluating a motion for summary judgment, the court views the evidence through the

4    prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby

5    Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-

6    moving party, including questions of credibility and of the weight that particular evidence is

7    accorded.  See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court

8    determines whether the non-moving party's "specific facts," coupled with disputed background or

9    contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.

10   T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).   In such a case,

11   summary judgment is inappropriate.  Anderson, 477 U.S. at 248.  However, where a rational trier of

12   fact could not find for the non-moving party based on the record as a whole, there is no "genuine

13   issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

### IV.  DISCUSSION

**A.    Defendant's Motion for Summary Judgment**

16        Defendant moves for summary judgment on all claims on the grounds that Plaintiffs' claims

17   fall under certain exemptions to the federal and state wage and hour laws.  The Court proceeds to

18   consider first the relevant claims and their exemptions, followed by remaining claims.

19        **1.    Claims and Exemptions Arising out of FLSA**

20             **a.    FLSA Outside Sales Exemption**

21        Defendant contends that Plaintiffs' overtime and minimum wage claims fail because

22   Plaintiffs fall under FLSA's outside sales exemption.  (Motion at 14-21.)

23        The FLSA exempts from its overtime and minimum wage provisions "any employee

24   employed... in the capacity of outside salesman."  29 U.S.C. § 213(a)(1).  Until 2004, 29 C.F.R. §

25   541.500 defined an outside sales employee as any employee who is (1) customarily engaged away

26   from the employer's place of business in making sales and (2) who spends no more than twenty

27

28                                    4

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

percent of their hours of work engaged in nonexempt work.  29 C.F.R. § 541.500 (2004).  On

August 23, 2004, the Department of Labor revised this regulation, eliminating the reference to the

"twenty percent" threshold.  Presently, an outside sales employee is defined as one whose "primary

duty" is making sales and who is "customarily and regularly engaged away from the employer's

place... of business in performing such primary duty."  29 C.F.R. § 541.500(a) (2006).  Since the

new definition is not retroactive,[3] and the class period encompasses claims before and after the 2004

revision, it is necessary to analyze whether RSRs qualify for the exemption under both definitions.

### i.        Prior to the August 23, 2004 Revision

The previous regulation covered employees engaged as outside salespeople, where the

employees spent no more than twenty percent of their working hours doing nonexempt work.  For

purposes of the twenty percent requirement, work performed incidental to and in conjunction with

the employee's own outside sales or solicitations, including incidental deliveries and collections, is

regarded as nonexempt work.  29 C.F.R. § 541.500 (2004).

The regulations contain extensive discussion of "driver salesmen," employees with job duties

similar to Plaintiffs'.  In particular, the regulations discuss the issue of determining whether a driver

is engaged in sales when his or her route involves recurring deliveries to established customers:

> Plainly, such a driver is not making sales when he delivers orders to customers to whom he
> did not make the initial sale, in amounts which are exactly or approximately prearranged by
> customer or contractual arrangement or in amounts specified by the customer and not
> significantly affected by solicitations of the customer by the delivering driver.  Making such
> deliveries, as well as recurring deliveries the amounts of which are determined by the volume
> of sales by the customer since the previous delivery rather than by any sales effort of the
> driver, do not qualify the driver as an outside salesman nor are such deliveries and the work
> incident thereto directly to the making or soliciting of sales by the driver so as to be
> considered exempt work.  On the other hand, route drivers are making sales when they
> actually obtain or solicit, at the stops on their routes, orders for their employer's products
> from persons who have authority to commit the customer for purchases. A driver who calls
> on new prospects for customers along his route and attempts to convince them of the
> desirability of accepting regular delivery of goods is likewise engaged in sales activity and is
> making sales to those from whom he obtains a commitment.

---

[3]  See Wang v. Chinese Daily News, 435 F. Supp. 2d 1042, 1063 (C.D. Cal. 2006); see also
Frost v. Barnhart, 314 F.3d 359 (9th Cir. 2002) (regulations cannot apply retroactively unless the
agency has authorization from Congress and the language of the regulation so states).

29 C.F.R. § 541.500 (2004).  Elsewhere, the regulations describe an exempt employee as one who: "provides the only sales contact between the employer and the customers, who calls on customers and takes orders for products which he delivers... and who receives compensation commensurate with the products sold."  Id.  Further, activities such as delivering product to customers, arranging products in store, rotating stock according to date, and cleaning and servicing displays, and performing other activities intended to promote customers' sales, are considered nonexempt tasks unless they are performed "as an incident to or in conjunction" with the employee's own sales.  Id.  "If the driver who performs such functions actually takes orders or obtains commitments from such customers for the products which he delivers, and the performance of the promotion work is in furtherance of his own sales efforts, his activities for that purpose in the customer's establishment would be exempt work."  Id.

In addition, consideration of the exemption's application may also involve the following: (1) comparison of job duties with other drivers and salespeople; (2) possession of any licenses required for salespeople; (3) any preexisting contractual arrangements regarding the amounts of products to be delivered; (4) job descriptions contained in any applicable collective bargaining agreements; (5) the employer's stated required job qualifications; (6) whether the employee received sales training or attended sales conferences; and (7) how the employee is paid—including what proportion of compensation is directly attributable to the employee's sales effort.  Id.

In this case, a number of factors are undisputed.  First, the RSRs have substantially different duties from transport drivers, who are employed by Defendant to transport goods from distribution centers to depots and compensated at hourly rates.  (Hopson Decl. ¶ 14.)  Second, the RSRs are not required to possess any sales or solicitation license to perform their duties.  Third, the applicable collective bargaining agreements refer to the RSRs as "driver salesmen" and "route sales representatives," and Defendant sought applicants with sales experience.  (Thompson McCann ¶¶ 3, 5, Ex. A, C.)  Finally, although the precise extent of sales training received by the RSRs is in

United States District Court

For the Northern District of California

dispute, such training was not extensive. (Driver Declarations[4] ¶ 7; Hopson Decl. ¶ 22, Exs. B, C.) However, these undisputed facts are not determinative of the analysis. For example, although RSRs clearly have different duties than transport drivers, they still may fail to qualify for the outside salesperson exemption if they are not actually engaged in sales. In addition, the fact that the state does not impose a sales licensing requirement on RSRs is also only minimally probative of whether the RSRs' job duties include sales. Finally, the regulations make clear that, while relevant, job titles and descriptions are of secondary importance to the actual duties performed.

Accordingly, the Court turns to the evidence presented with respect to the RSRs' job duties. RSRs spend the majority of their time performing activity such as delivery, stocking, and other tasks generally considered nonexempt. (Driver Decls. ¶ 3.) Whether the twenty-percent threshold is met, then, is dependent on whether this work can be considered incidental to sales consummated by the RSRs themselves. The extent to which the RSRs engaged in sales activities is highly disputed. For example, Defendant offers that it has no preexisting arrangements with customer stores regarding the amount of products sold. (Hopson Decl. ¶ 17; Davis Decl. ¶ 2, Ex. A.) However, Defendant concedes that other employees are primarily responsible for soliciting new customers. (Hopson Decl. ¶ 12.) The fact that RSRs do not typically solicit new business from national chains or individual stores not on their routes[5] does not necessarily preclude application of the exemption. See Palmieri v. Nynex Long Distance Co., No. 04-138, 2005 WL 767170, at *14 (D. Me. March 28, 2005). On the other hand, Plaintiffs offer that RSRs determine delivery amounts primarily based on past sales using handheld computers, that RSRs in fact have little contact with customer personnel, and that their sales activities are limited to offering the promotions dictated by Defendant. (Driver

---

[4] Declarations of Thomas Leonard, Charlie, Braderic, William Harrison, Larry Bryan Newman, Gary Hoskins, Chris Herr, Steven Cross, Frank Dominguez, Isagani Catindig, Wayne Pridham, Mario Mussomeli, Dan Shook, Lanny Schotter, Seldon McAllister, Paul Fowlie, Michael Glendon, Philip Cantelme, Rob Hodgkinson, Larry Woolfe, John Maddow, and Timothy Corr. (collectively, "Driver Decls.")

[5] Defendant offers that there are at least some RSRs driving particular route types who are encouraged to solicit business from new individual stores. (Hopson Decl. ¶ 26.)

United States District Court

For the Northern District of California

Decls. ¶¶ 4, 6.)[6] Accordingly, Court finds that material issues of fact exist regarding the extent to which RSRs actually consummate sales.

With respect to compensation, Defendant offers that the majority of the RSRs' compensation comes from sales commission: RSRs are paid 8.5 percent of all weekly net sales on their route, with the exception of Entemann's products, for which they receive 6.5 percent of sales. (Hopson Decl. ¶ 8.) Plaintiffs contend that these payments do not constitute commissions, since following a route switch, a new RSR is credited with any sales increase on the route attributable to the former RSR. Although this method of payment is consistent with application of the exemption, given the disputes regarding the RSRs underlying sales activities, this factor cannot be determinative. Accordingly, the Court denies Defendant's motion for summary judgment with respect to the application of the prior FLSA outside sales exemption.

### ii.     After the August 23, 2004 Revision

The analysis under the current regulation is substantially similar. Under the current regulation, the exemption covers employees whose "primary duty" is sales, eliminating the twenty-percent threshold for nonexempt work. An employee's "primary duty" is "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In evaluating "primary duty," courts should look to the job as a whole and consider the relative importance of the exempt duties as compared with other types of duties, the amount of time spent performing the work, the employee's relative freedom from direct supervision, and the relationship between the

---

[6] Defendant objects to the cited portions of these declarations on numerous bases. The applicable objections are: (1) some declarations are incomplete, as they contain blank spaces for time estimates that have not been filled; (2) RSRs' statements that other employees persuade customers to carry certain products, and regarding the amount of time RSRs spend talking to customer personnel, constitute hearsay; (3) the RSRs lack personal knowledge of the purpose for which they are employed or the activities of other of Defendant's employees, and (4) the declarations contain improper legal conclusions regarding the application of the outside salesperson exemption. (Defendant's Objections to Plaintiffs' Evidence, Docket Item No. 253.) The Court has not considered any incomplete statements in the declarations, nor any legal conclusions regarding whether the RSRs' job duties constitute sales. Additionally, the Court finds that Plaintiffs have not shown personal knowledge regarding the activities of other of Defendant's employees in making sales. The remaining objections are overruled.

employee's salary and wages paid to other employees for the kind of nonexempt work performed by the employee.  Id.

The revised regulations continue to address driver salesmen, renamed "drivers who sell," with the relevant criteria remaining substantively the same.[7]  For the reasons expressed above with

_____

[7]  The relevant text of the regulation reads as follows:

(b) Several factors should be considered in determining if a driver has a primary duty of making sales, including, but not limited to: a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales.

(c) Drivers who may qualify as exempt outside sales employees include:

(1) A driver who provides the only sales contact between the employer and the customers visited, who calls on customers and takes orders for products, who delivers products from stock in the employee's vehicle or procures and delivers the product to the customer on a later trip, and who receives compensation commensurate with the volume of products sold.

(2) A driver who obtains or solicits orders for the employer's products from persons who have authority to commit the customer for purchases.

(3) A driver who calls on new prospects for customers along the employee's route and attempts to convince them of the desirability of accepting regular delivery of goods.

(4) A driver who calls on established customers along the route and persuades regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery was made by someone else.

(d) Drivers who generally would not qualify as exempt outside sales employees include:

(1) A route driver whose primary duty is to transport products sold by the employer through vending machines and to keep such machines stocked, in good operating condition, and in good locations.

(2) A driver who often calls on established customers day after day or week after week, delivering a quantity of the employer's products at each call when the sale was not significantly affected by solicitations of the customer by the delivering driver or the amount of the sale is determined by the volume of the customer's sales since the previous delivery.

(3) A driver primarily engaged in making deliveries to customers and performing activities I ntended to promote sales by customers (including placing point-of-sale and other advertising materials, price stamping commodities, arranging merchandise on shelves, in coolers or in cabinets, rotating stock according to date, and cleaning and otherwise servicing display

9

1  respect to the old FLSA outside sales exemption, there are material issues of fact with respect to the

2  application of the exemption under the current rules.  The amount of time RSRs spend performing

3  what can reasonably be construed as sales activities, and the extent to which those activities are in

4  furtherance of sales actually consummated by RSRs are disputed.  Such facts are crucially important

5  in determining the RSRs' "primary duty," and hence, the application of the exemption.

6        Accordingly, the Court denies Defendant's motion for summary judgment with respect to

7  application of the outside sales exemption to Plaintiffs' FLSA overtime and minimum wage claims.

8              **b.        FLSA Motor Carrier Exemption**

9        Defendant also contends that Plaintiffs qualify for the Motor Carrier Act ("MCA")

10  exemption to FLSA's overtime requirements.  (Motion at 23-33.)

11        Employees for whom the Secretary of Transportation may regulate qualifications and hours

12  of service under the Motor Carrier Act are exempt from FLSA's overtime requirements.  29 U.S.C. §

13  213(b)(1).  The exemption applies where: (1) the employee is employed by a carrier whose

14  transportation of passengers or property by motor vehicle is subject to the Secretary of

15  Transportation's jurisdiction under section 204 of the Motor Carrier Act (49 U.S.C. § 31502); and

16  (2) the employee's activities directly affect safety of motor vehicles transporting passengers or

17  property in interstate or foreign commerce.  See 29 C.F.R. § 782.2 (a).

18        The parties do not dispute that the RSRs' activities affect motor vehicle safety.  Thus, the

19  Court proceeds to consider whether RSRs transport property in interstate commerce.

20              **i.        Transport of Property in Interstate Commerce**

21         Plaintiffs deny that they engage in transport of property in interstate commerce.  (Opposition

22  at 25-26.)  In particular, Plaintiffs contend, and Defendant does not dispute, that all but nine of the

23  RSRs perform their duties entirely within the state of California.  (Hopson Decl. ¶ 9.)

24

25  _____

26        cases), unless such work is in furtherance of the driver's own sales efforts.

27  29 C.F.R. § 541.504 (2006).

28                                10

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Transportation within a single state remains "interstate" in character when it forms a part of a

2  "practical continuity of movement" across state lines from the point of origin to the point of

3  destination.  Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943).  The crucial factor in

4  determining whether such continuity of movement exists is the intent of the shipper at the time of

5  shipment.  International Bhd. of Teamsters v. ICC, 921 F.2d 904, 907-08 (9th Cir. 1990).  This, in

6  turn, is determined by examination of the "entire panoply of facts and circumstances surrounding the

7  transportation."  Watkins v. Ameripride Servs., 375 F.3d 821, 825 (9th Cir. 2004) (internal

8  quotation omitted).

9    In this case, Defendant offers considerable evidence to show a persisting intent to continue

10  the chain of interstate commerce.  For example, RSRs routinely carry goods that originate outside of

11  California.  (Hopson Decl. ¶¶ 37-44, 46, 49; Piercey Decl. ¶¶ 3, 9.)  These products are shipped

12  based on orders placed by the RSRs three to seven days before the products arrive in the depots.

13  (Hopson Depo. 52:11-53:5.)  Finally, many–though not all–of Defendant's products are shipped

14  from distribution center to depot to customer within the same day.  (Piercey Decl. ¶ 17.)  Plaintiffs

15  do not challenge the sufficiency of this evidence, but instead, contend that they are engaged in

16  purely intrastate activities because, at the time out-of-state goods are shipped from out-of-state, no

17  particular customer is identified to receive delivery.  (Opposition at 25-26.)

18    The Ninth Circuit has held that a temporary storage of out-of-state goods at an intrastate

19  warehouse does not alter the interstate character of the distribution activities.  Watkins, 375 F.3d at

20  826.  By contrast, indefinite storage in an intrastate warehouse, for shipment to customers yet to be

21  identified, likely breaks the continuity of the interstate distribution and renders subsequent delivery

22  purely intrastate activity.  Id.

23    Plaintiffs present the testimony of Defendant's Distribution Director and Regional Sales

24  Manager for Southern California that goods are not earmarked for particular customers as they are

25  shipped from out-of-state.  While such evidence is relevant under Watkins, standing alone, it cannot

26  be determinative.  The evidence falls short of demonstrating the goods are stored for extensive or

27

28                                         11

1    indefinite periods of time.  In the face of Defendant's undisputed evidence of its intent, Plaintiffs do

2    not raise a triable issue of material fact with respect to the interstate character of their activities.

### ii.        Carrier Subject to MCA

4        Alternatively, Plaintiffs contend that Defendant is not a "motor private carrier" subject to the

5    MCA under its present definition.  (Opposition at 24.)

6        The MCA exemption applies where the employer falls within the MCA's grant of regulatory

7    authority, without regard for whether the employer has been regulated directly.  <u>Morris v. McComb</u>,

8    332 U.S. 422, 434 (1947); <u>Klitzke v. Steiner Corp.</u>, 110 F.3d 1465, 1469 (9th Cir. 1997).  The

9    Secretary of Transportation's jurisdiction under the MCA extends to transportation by motor carriers

10   to the extent that passengers, property, or both are transported by motor carriers or motor private

11   carriers in interstate commerce.  49 U.S.C. §§ 13501, 31502(b).

12       Prior to August 10, 2005, a "motor private carrier" was defined as a person transporting

13   property in interstate commerce by motor vehicle, where the property is owned by the person and is

14   transported for sale.  49 U.S.C. § 13102(15) (2000).  In this case, Defendant submitted evidence

15   which establishes, and the parties do not dispute, that while this definition was in effect, Defendant

16   was a motor private carrier subject to the jurisdiction of the MCA.

17       However, on August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient

18   Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") which narrowed the scope of the

19   Secretary of Transportation's regulatory authority under the MCA.  SAFETEA-LU amended the

20   definition of "motor private carrier" found in 49 U.S.C. § 13105 to cover carriers transporting

21   property by "commercial motor vehicle (as defined in [49 U.S.C.] section 31132)."  Section 31132

22   defines a commercial motor vehicle as a vehicle with a gross vehicle weight of at least 10,001

23   pounds.  49. U.S.C. § 31132.  Thus, the Secretary's jurisdiction currently extends only to vehicles

24   weighing in excess of 10,000 pounds.  <u>See</u> <u>Dell'Orfano v. Ikon Office Solutions, Inc.</u>, No.

25   5:05-CV-245, 2006 U.S. Dist. LEXIS 61563, at *5-6 (M.D. Ga. August 29, 2006).  The change

26

27

28                                              12

United States District Court

For the Northern District of California

1  placed workers transporting property in vehicles weighing 10,000 pounds or less outside the MCA

2  exemption, and back within the scope of FLSA.

3        Defendant offers no direct evidence that any particular named or opt-in Plaintiff operated a

4  qualifying vehicle after August 10, 2005.  Instead, it offers declaration testimony to the effect that:

5  (1) a majority of trucks used by the RSRs have a gross vehicle weight over 10,001 pounds; (2) "16

6  of 27 named and opt-in Plaintiffs" drive a qualifying vehicle; and (3) that the remainder of the class

7  could potentially drive a qualifying vehicle as a "loaner" while their usual trucks undergo routine

8  repairs.  (Declaration of Charles Piercy in Support of Defendant's Motion for Summary Judgment ¶¶

9  18-19, Docket Item No. 215.)  Defendant cannot point to a Plaintiff and prove that the exemption

10  applies to that person.  The Court finds this insufficient to fulfill Defendant's burden to establish the

11  exemption.  See Douglas v. Argo-Tech. Corp., 113 F.3d 67, 70 (6th Cir. 1997).

12        Accordingly, the Court grants Defendant's motion for summary judgment with respect to

13  application of the Motor Carrier exemption as to overtime pay prior to August 10, 2005.

14        However, since the requirements for the FLSA Motor Carrier Exemption are conjunctive, the

15  Court denies Defendant's motion for summary judgment with respect to its application as to

16  overtime pay after August 10, 2005.

17              **c.    FLSA Minimum Wage Claim**

18        Defendant moves for summary judgment on Plaintiff's FLSA minimum wage claim on the

19  ground that, regardless of their exempt or nonexempt status, Plaintiffs are paid more than the

20  minimum wage.  (Motion at 33-34.)

21        To establish a minimum wage violation, a plaintiff must prove that work was performed for

22  which they were not properly compensated and produce evidence to show  "the amount and extent

23  of that work as a matter of just and reasonable inference." Brock v. Seto, 790 F.2d 1446, 1448 (9th

24  Cir. 1986) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  In

25  determining whether a FLSA minimum wage violation has occurred, a workweek standard–i.e.,

26

27

28                              13

1  dividing an employee's total number of hours worked in a week by weekly pay–is appropriate to

2  calculate that employee's hourly wages.  See Dove v. Coupe, 759 F.2d 167, 171-73 (D.C. Cir. 1985).

3       In this case, the federal minimum wage during the relevant time period was $5.15 per hour.

4  29 U.S.C. § 206(1).  Defendant has offered evidence that RSRs are paid a base weekly salary of

5  $482 for 45 clock hours, or an hourly rate of approximately $10.71.[8]  (Thompson-McCann Decl.,

6  Ex. A at 6, 16.)  Additionally, RSRs are paid commissions, which comprise the bulk of their

7  compensation.  (Hopson Decl. ¶ 8.)  Plaintiffs have not offered evidence they were paid less than

8  minimum wage, and did not oppose Defendant's motion on this claim.

9       Accordingly, the Court grants Defendant's summary judgment on Plaintiffs' FLSA minimum

10  wage claim.

11            **d.    FLSA Record Keeping Claim**

12       Defendant moves for summary judgment on Plaintiff's FLSA record keeping claim on the

13  ground that Plaintiffs lack standing.  (Motion at 34.)

14       Title 29 U.S.C. § 215(a)(5) makes failure to comply with the recordkeeping provisions of

15  FLSA or its supporting regulations a direct violation of the statute.  However, neither the FLSA nor

16  its regulations create a private right of action to enforce Section 215(a)(5).  See Bureerong v.

17  Uvawas, 922 F. Supp. 1450, 1471 (C.D. Cal. 1996).  Although the Ninth Circuit has not considered

18  whether there is an implied right of action for enforcement of the record keeping provisions of

19  FLSA, courts confronting the question have concluded there is not.  See Elwell v. Univ. Hosps.

20  Home Care Servs., 276 F.3d 832, 844 (6th Cir. 2002); East v. Bullock's, Inc., 34 F. Supp. 2d 1176,

21  1182-83 (D. Ariz. 1998).

22       Plaintiffs do not oppose Defendant's motion on this claim.  Accordingly, the Court grants

23  Defendant's motion for summary judgment on the FLSA record keeping claim.

24  _____

25       [8]  Defendant's exhibit actually shows multiple weekly base rates: there are separate rates for
26  "inexperienced" RSRs, and the base rate has varied over the class period.  (Thompson-McCann
   Decl. Ex. A at 16.)  However, all rates listed are in excess of the federal minimum wage.  Given
27  Plaintiffs' failure to oppose Defendant's Motion on this claim, it is unnecessary to consider these
   variations in detail.

28                           14

United States District Court
For the Northern District of California

1

2.        **Claims and Exemptions Arising Out Of State Law**

2

a.        **California Collective Bargaining Agreement Exemption**

3        Defendant moves for summary judgment of Plaintiffs' state overtime claim on the ground

4    that Plaintiffs fall under the California's collective bargaining agreement ("CBA") exemption.

5    (Motion at 35-36.)

6        Employees in California are exempt from state overtime requirements if they are covered by

7    a CBA that: (1) provides for the wages, hours of work, and working conditions of the employees; (2)

8    provides premium wage rates for all overtime hours worked; and (3) provides a regular hourly rate

9    of pay of at least 30 percent more than minimum wage.  Cal. Lab. Code § 514; Cal. Code Regs. tit.

10    8, § 11010(3)(H).  The overtime exemption allows employees to negotiate alternative overtime

11    compensation schemes to the one provided by the state.  <u>Firestone v. Southern Cal. Gas Co.</u>, 219

12    F.3d 1063, 1067 (9th Cir. 2000); <u>Lujan v. Southern Cal. Gas Co.</u>, 96 Cal. App. 4th 1200, 1212

13    (2002).

14        Here, Defendant has submitted a CBA applicable to all named Plaintiffs.  (Thompson-

15    McCann Decl. ¶ 3, Ex. A.)  The CBA, which covers the entire class period, provides for wages,

16    hours of work, and contains detailed provisions regarding working conditions.  (<u>Id.</u>, Ex. A.)  The

17    CBA provides overtime pay for all time worked in excess of the 45 hour work week, at a rate of 1.5

18    times the regular hourly rate of pay.[9]  (<u>Id.</u> at 6, 14.)  Finally, throughout the class period, RSRs were

19    paid at hourly rates that exceed minimum wage plus thirty percent.  (<u>Id.</u> at 16.)

20        Plaintiffs only challenge the applicability of the exemption on the second factor, contending

21    that the CBA does not provide a premium wage rate for all overtime hours worked.  (Opposition at

22    15-17.)  Plaintiffs contend that their CBA fails to qualify because: (1) it provides for weekly

23    overtime, i.e., hours worked in excess of 45 per week, but not daily overtime, and (2) RSRs, in fact,

24    were not paid overtime when they worked through meal periods.  <u>Id.</u>

25

26

27        [9] A "premium wage rate," for purposes of the exemption, is *any* amount over the regular
hourly rate of pay.  <u>Lujan</u>, Cal. App. 4th at 1212.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Plaintiffs offer no authority for the proposition that a CBA must provide daily, not weekly

2   overtime, to qualify for the exemption.  The California Labor Commissioner is entitled to deference

3   with respect to the interpretation of the CBA exemption.  Lujan v. Southern Cal. Gas. Co., 94 Cal.

4   App. 4th 1200 (2002).  The Commissioner interprets the exemption to leave the determination of

5   how "overtime" is calculated to the parties to the CBA.  DLSE Opinion Letter, April 2, 1991, at 3

6   n2.  With respect to Plaintiffs' second argument, a failure to pay overtime under the CBA may

7   constitute a violation of its terms.  E.g., Lerwill v. Inflight Motion Pictures, Inc., 343 F. Supp. 1027

8   (N.D. Cal. 1972).  Such a failure would not, however, prevent the application of the exemption.  See

9   Rawson v. Tosco Ref. Co., 57 Cal. App. 4th 1520 (1997).

10    The Court finds the California CBA exemption applicable to Plaintiffs.  Accordingly, the

11   Court grants Defendant's motion for summary judgment on Plaintiffs' state claim for failure to pay

12   wages at overtime rates.

13    **b.    California Outside Sales Exemption**

14    Defendant moves for summary judgment on all of Plaintiffs' state law claims on the ground

15   that Plaintiffs qualify for California's outside sales exemption.  (Motion at 36-39.)

16    Employees that qualify for the "outside salesperson" exemption are exempt from California

17   state law overtime and minimum wage requirements.  Cal. Lab. Code § 1171; Cal. Code Regs. tit. 8,

18   § 11000.  The outside sales exemption is defined somewhat differently for purposes of California

19   law than under FLSA.  In California, an outside salesperson is any employee who "customarily and

20   regularly works more than half the working time away from the employer's place of business selling

21   tangible or intangible items or obtaining orders or contracts for products, services or use of

22   facilities."  Cal. Code Regs. tit. 8, § 11010(2)(J).

23    Courts should determine whether the fifty percent threshold is met in light of the "realistic

24   requirements of the job."  Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 802 (1999).  This means

25   the analysis focuses both on the actual activities of the employee and the employer's reasonable

26   expectations.  In comparing the two, the Court must evaluate whether the fifty percent threshold is

27

28    16

United States District Court

For the Northern District of California

1   missed merely because of the employee's substandard performance.  Id.  More importantly, if "an

2   employee travels to a destination to engage in both sales and nonsales activities, the travel time must

3   be apportioned among [sic] the two types of activities for purposes of determining the total amount

4   of time spent doing sales and nonsales work."  Id. at 801.

5        Defendant offers that Plaintiffs regularly spend more than half of their days outside of

6   Defendant's places of business.  (Hopson Decl. ¶ 31.)  Of this time, Plaintiffs spend only 20-90

7   minutes driving between stops on their sales routes.  (Id. ¶ 10; Jordan Depo. 46:12-47:7; Venable

8   Depo. 48:10-49:7; Hoskins Depo. 47:1-48:5.)  The thrust of Defendant's argument, then, is that most

9   or all time spent by RSRs outside of the depot is exempt sales time.  For the same reasons discussed

10  in relation to the FLSA outside sales exemption, material questions of fact exist regarding Plaintiffs'

11  sales activities outside the depot.

12       Accordingly, the Court denies Defendant's motion for summary judgment on all of Plaintiffs'

13  state law claims based on the California outside sales exemption.

14               **c.     California Minimum Wage Claim**

15       Defendant moves for summary judgment on the grounds that, regardless of state law

16  exemptions, RSRs were at all times paid in excess of California minimum wage.  (Motion at 39.)

17       The California minimum wage has varied during the time period relevant to this case.  As of

18  January 1, 2007, California minimum wage is set at $7.50 an hour.  Cal. Lab. Code § 1182.12.

19  Between January 1, 2002, and December 31, 2006, California minimum wage was set at $6.75 an

20  hour.  Cal. Lab. Code § 1182.11; Cal. Code Regs. tit. 8, § 11000(2).

21       In this case, the terms of the CBA provide that at all times the RSRs were paid a base rate

22  greater than the California minimum wage.  The lowest base rate applicable to an experienced RSR

23  during the period is the current rate of $482, or approximately $10.71 per hour for a 45 hour work

24  week.[10]  (Thompson-McCann Decl. ¶ 3, Ex. A at 6, 16.)

25  _____

26       [10]  Inexperienced RSRs are paid at a lower base rates during their first several months of
    employment.  (Thompson-McCann Decl., Ex. A at 16-17.)  The Court notes that all base rates
27  applicable to these employees also exceed the California minimum wage.

28                                        17

Plaintiffs have failed to submit any evidence to suggest the base rates of pay identified in the CBA are inaccurate.  Instead, Plaintiffs contend that, for purposes of calculating minimum wage, Defendant may not use the workweek standard applicable under FLSA.  Plaintiffs contend that the base rate is only applicable to the 40 hours of actual work performed by the RSRs, and not to the five additional meal or rest break hours during the week.  (Opposition at 17-18.)

California minimum wage claims are not analyzed in terms of the FLSA workweek standard. Argenta v. Osmose, Inc., 135 Cal. App. 4th 314 (2005); but see Medrano v. D'Arrigo Bros. Co., 336 F. Supp. 2d 1053, 1057-58 (N.D. Cal. 2004).  California's policy in favor of "full payment of wages for all hours worked" means that each hour worked must be compensated at or above the minimum wage.  Argenta, 135 Cal. App. 4th at 323-24.  The employer may not average hours that the employee is paid at more than the minimum wage against hours for which the employee was not paid at all.  Id.

Defendant has submitted evidence that under the CBA, RSRs are paid for a five-day, 45-hour workweek.  (Thompson-McCann Decl. ¶ 4.; Plaintiffs' Declaration of Ira Spiro in Support of Plaintiffs' Opposition, Ex. 3 at 37:5-13; 48:1-7, Docket Item No. 245.)  Plaintiffs' only evidence that the weekly base pay is instead applicable to a 40-hour workweek is a section in the CBA which states:

> Eight (8) hours or less shall constitute a day's work, which shall be completed within a consecutive period of nine (9) hours.  All time worked...in excess of forty-five (45) hours...shall be paid at the overtime rate...It is understood that overall clock time shall include one (1) hour per day for meal period and personal time...

(Thompson-McCann Decl., Ex. A at 6.)  This provision speaks only to what constitutes a workweek under the CBA, and does not address whether the weekly base pay is intended to compensate the 40 "working" hours as opposed to the 45 "clock hours."  The Court finds that this language is insufficient to create a dispute of material fact regarding the applicability of the weekly base pay to a period other than the 45 hour workweek.

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiffs' California minimum wage claim.

1

### d.    Wage Statement Claim

2        Defendant moves for summary judgment on Plaintiffs' claim for failure to itemized pay

3  statements on the grounds that (1) Plaintiffs' were provided with compliant wage statements, and (2)

4  Plaintiffs cannot demonstrate injury from any wage statement inaccuracies.  (Motion at 39.)

5  Plaintiffs contends that the wage statements provided by Defendant do not show hours worked or the

6  hourly rate for overtime.  (Opposition at 20.)

7        California Labor Code Section 226 specifies the content of paycheck stubs.  The statute

8  directs employers to provide each employee, at the time wages are paid, with a separable statement

9  showing, among other things, the gross and net wages earned, the total hours the employee worked,

10  all deductions, the dates of the pay period, the employee's name and identification number, the

11  employer's name and address, and all applicable hourly rates in effect during the pay period.  Cal.

12  Lab. Code § 226(a).  The obligation to provide hours worked can only be fulfilled by listing the

13  precise number of hours worked by the employee.  <u>Zavala v. Scott Brothers Dairy, Inc.</u>, 143 Cal.

14  App. 4th 585, 591-92 (2006).  However, employers are not required to list actual working hours for

15  exempt employees.  Cal. Lab. Code § 226.  Employees suffering injury from an employer's knowing

16  and intentional failure to comply with this requirement may bring an action for damages.  Cal. Lab.

17  Code § 226(e).

18        In this case, Plaintiffs have failed to submit evidence that they were harmed by any potential

19  inaccuracies in their wage statements.  Plaintiffs rely on  <u>Wang v. Chinese Daily News</u>, 435 F. Supp.

20  2d 1042 (C.D. Cal. 2006), for the proposition that an inaccurate wage statement *may* prevent an

21  employee from learning he or she is owed additional wages until after the applicable statute of

22  limitations has run, but offer no proof that this has actually occurred.  However, assuming Plaintiffs

23  are unable to prove injury pursuant to Section 226(e), the finding of a violation would still entitle

24  Plaintiffs to injunctive relief and recovery of costs and attorney fees.  <u>See</u> Cal. Lab. Code § 226(g).

25

26

27

28                                    19

**United States District Court**
For the Northern District of California

1    The principal dispute regarding the content of the wage statements is whether they properly

2    reflected the actual working hours of the RSRs. Whether the statements were required to list all

3    hours worked depends in part on whether the RSRs are exempt outside salespeople. The Court has

4    denied summary judgment with respect to application of that exemption; thus, it follows that the

5    Court cannot concurrently grant summary judgment based on the content of the wage statements

6    themselves, which show only hours worked in excess of forty-five per week. (See Declaration of

7    Rachel Fauver in Support of Defendant's Motion for Summary Judgment ¶ 5, Docket Item No. 213.)

8    Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiffs' wage

9    statement claim.

10                    **e.        California Business and Professions Code § 17200**

11    Defendant moves for summary judgment on the basis that, if the Court grants summary

12    judgment on Plaintiffs' other claims, Plaintiffs can identify no unlawful business practice on which

13    to base a Section 17200 claim. The Court has denied summary judgment as to certain FLSA and

14    California exemptions, and, as a result, various claims remain in the lawsuit. Proof of such claims

15    would provide a basis for related § 17200 claims. Accordingly, the Court denies summary judgment

16    as to Section 17200.

17             **3.        Application to Plaintiffs' Claims**

18    In summary, the Court has granted Defendant's motion with respect to the following claims:

19    (1) failure to pay minimum wages under FLSA; (2) failure to maintain records under FLSA; and (3)

20    failure to pay minimum wage under California law. In addition, the Court has granted summary

21    judgment with respect to the following exemptions: (1) the Motor Carrier Act exemption prior to

22    August 10, 2005; and (2) the California Collective Bargaining Agreement exemption. Application

23    of these exemptions precludes Plaintiffs' FLSA overtime claim prior to August 10, 2005 and their

24    California overtime claim; accordingly, the Court grants summary judgment with respect to those

25    claims as well.

26

27

28                                                                20

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Finally, the parties dispute whether the Court's summary judgment ruling on Plaintiffs' pendent state law claims is binding on anyone but the named Plaintiffs. Defendant contends that the conditional FLSA certification includes the pendent state law claims, and accordingly, any summary judgment ruling binds any opt-in Plaintiffs who have joined the FLSA class. Plaintiffs contend that the state claims were brought as a Rule 23 class, and, because the class has not been certified, any ruling binds only the named Plaintiffs.

Pendent state law claims can be brought either as part of the FLSA collective action procedure or as a simultaneously pending Rule 23 class action. Compare Edwards v. City of Long Beach, 2006 WL 377941, *5 (C.D. Cal. Dec. 12, 2006); Leuthold v. Destination America, Inc. 224 F.R.D. 462, 469 (N.D. Cal. 2004); with Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005); Bahramipour v. Citigroup Global Markets, Inc., 2006 U.S. Dist. LEXIS 9010, *13-14 (N.D. Cal. 2006). The Court's conditional certification order speaks only to Plaintiffs' FLSA claims. (See Docket Item No. 89.) Accordingly, no class has been certified with respect to Plaintiffs' state law claims, and the Court's summary judgment ruling binds only the named Plaintiffs. See Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1013, n1 (9th Cir. 2000) (citing Wright v. Shock, 742 F.2d 541 (9th Cir. 1984)).

**B.    Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment on their Third Claim for relief, for failure to provide meal breaks under California Law. In particular, Plaintiffs claim that Defendant: (1) failed to make legal records of meal breaks as required by statute, and (2) failed to fulfill their legal obligation to affirmatively provide the meal periods. (Plaintiffs' Motion at 6.) However, in their opposition to Defendant's motion, Plaintiffs argue that there are disputed questions of material fact regarding applicability of the California outside sales exemption. Whether Defendant failed to provide meal breaks is in violation of California law is dependent on a determination of whether the California outside sales exemption is applicable to Plaintiffs. Accordingly, this precludes summary judgment on Plaintiffs' meal breaks claim.

**United States District Court**
For the Northern District of California

**C.    Defendant's Motions to Relate and Consolidate Cases**

On June 4, 2007, Defendant moves to relate and consolidate this case with <u>Morrison, et al. v. Bimbo Bakeries USA, Inc</u>. which was transferred from the Central District and is currently pending before Judge Susan Illston, Case No. 07-03156-SI.  (<u>See</u> Docket Item Nos. 275 and 277.)  The Court finds good cause to relate the cases.  However, in light of the Court's findings in this case, the Court DENIES Defendant's motion to consolidate without prejudice pending a further case management conference with the respective parties.

**V.  CONCLUSION**

The Court GRANTS in part, and DENIES in part, Defendant's Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Summary Judgment.  Defendant's Motion to Strike the Declaration of Michael R. Elliot is DENIED as moot.  Defendant's Motion for Sanctions is DENIED.

The Court grants summary judgment with respect to the following claims:

1.    Failure to pay minimum wages in violation of FLSA.

2.    Failure to maintain records in violation of FLSA.

3.    Failure to pay minimum wages in violation of California law.

4.    Failure to pay overtime in violation of California Labor Code section 1194.

The following claims remain in the action:

1.    Failure to provide meal breaks.

2.    Failure to pay wages on ending of employment.

3.    Failure to provide itemized pay statements.

4.    Failure to pay overtime in violation of FLSA (after August 10, 2005).

5.    Violations of California Business and Professions Code section 17200.

Further, the Court GRANTS Defendant's Administrative Motion to Consider Whether Cases Should Be Related.  As the Court assigned to the earliest filed case, this Court finds that the more

recently filed case, <u>Morrison, et al. v. Bimbo Bakeries USA, Inc.</u>, Case No. 07-03156-SI, is related to the present action.  As such, <u>Morrison</u> shall be reassigned to this Court.

The parties in both actions shall appear for a Further Case Management Conference on **October 29, 2007 at 10 AM.**  Pursuant to the Civil Local Rules, the parties shall file a Joint Case Management Statement by **October 19, 2007**.  The statement shall advise the Court on issues the parties wish to discuss, including, but not limited to, consolidation and its impact on discovery.

Dated: September 28, 2007

_____
JAMES WARE
United States District Judge

23

**United States District Court**

For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Carolyn Blecha Hall carolyn.hall@bingham.com
Dennis Frank Moss jeanette@spiromoss.com
Elizabeth Jean Carroll betsy.carroll@bingham.com
Ira Spiro ispiro@smbhblaw.com
Katherine J. Odenbreit kodenbreit@smbhblaw.com
Kristen Pezone kristen.pezone@bingham.com
Rebecca Sobie rsobie@smbhblaw.com
Robert Ira Spiro ispiro@smbhblaw.com
Wendy M. Lazerson wendy.lazerson@bingham.com

**Dated: September 28, 2007**                    **Richard W. Wieking, Clerk**

                                                 **By:   /s/ JW Chambers**
                                                 **Elizabeth Garcia**
                                                 **Courtroom Deputy**